**SO ORDERED.**

**SIGNED this 15th day of October, 2012.**



Robert E. Nugent
United States Chief Bankruptcy Judge

_____



**PUBLISHED**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS**

IN RE:
)
RONALD E. PEAKE, ) Case No. 11-13575
) Chapter 7
Debtor. )
_____)

## MEMORANDUM OPINION

Kansas law holds that the beneficiary of a self-settled living trust may claim his equitable interest in real property held in the trust as his exempt homestead.[1] Section 522(p) of the Bankruptcy Code caps the "amount of interest" that a debtor may acquire in his homestead in the 1,215 days before filing at $146,450.[2] That amount, however, doesn't include any interest that the debtor transferred from his prior

---

[1] *Redmond v. Kester,* 284 Kan. 209, 159 P.3d 1004 (2007).

[2] 11 U.S.C. § 522(p)(1). Subsequent statutory references are to the Bankruptcy Code unless otherwise cited.

1

principal residence.[3] Prepetition, Ronald and Polly Peake's living trust deeded their residence to Ronald so that he could grant an "equity conversion" or "reverse" mortgage and pay three senior mortgages on their homestead. He claims the homestead exempt in his bankruptcy, but the Trustee contends that Peake "acquired his interest" in the entire homestead within 1,215 days of filing bankruptcy, subjecting him to the homestead limitation in § 522(p). Because all that Peake acquired when he received the trust's deed to his homestead was legal title to property in which he already had an equitable interest that he could exempt under Kansas law, and because the trustee did not demonstrate any increase in the equity in his homestead, he received no "amount of interest" in the homestead within the 1,215-day period and his homestead exemption is not subject to § 522(p)(1)'s statutory cap. The trustee's objection to Peake's homestead exemption should be overruled.[4]

### *Jurisdiction*

The allowance or disallowance of exemptions from property of the estate is a core proceeding under 28 U.S.C. § 157(b)(2)(B), over which this Court may exercise subject matter jurisdiction under 28 U.S.C. § 157(b)(1) and § 1334(b).

### *Facts*

Ronald and Polly Peake acquired their home in Wichita from Peake's construction company in July of 2004, taking title as joint tenants with the right of survivorship.[5] In March of 2005, they deeded

---

[3] § 522(p)(2)(B).

[4] An evidentiary hearing was held on the trustee's objection to debtor's homestead exemption on August 14, 2012. Attorney J. Michael Morris appeared on behalf of the debtor Ronald Peake. The trustee Carl B. Davis appeared in person. The parties stipulated to the admission of the exhibits – Trustee's Exhibits 1-16 and Debtor's Exhibits A-I.

[5] Ex. 1 and 2.

2

the home to the Peake Living Trust dated December 15, 1994.[6] This deed was a "transfer on death" deed which stated that it had no effect until either of them died, at which time the decedent's share of the property would pass to the trust. Then on June 14, 2005, they again deeded the property to the trust, this time by warranty deed, vesting present title in the trust.[7] The trustees of the Peake Living Trust are the Peakes and they, along with their children, are its beneficiaries.[8] Upon either elder Peake's death, the remainder of the trust assets are administered for the survivor and, when he or she dies, the trust terminates after the disposition of its assets to the Peakes' two children. The home is worth not less than $564,100 and no more than $625,000, though in the absence of any value testimony beyond that of Mr. Peake, the Court lacks persuasive evidence that would support fixing a more precise value, and in any event, use of either value does not change the result in this case.[9]

In March of 2007, the Trust deeded the homestead to the Peakes to facilitate the refinance of a mortgage. The Peakes deeded it back to the Trust a day later for some unexplained reason. In 2008, Mr. Peake's construction business fell prey to that year's financial collapse and his health began to fail. In June of 2011, the Trust deeded the property to Ronald Peake, "a married man," so that he could secure a home equity conversion mortgage ("HECM") that would enable him to repay debts secured by the homestead.[10] Because these reverse mortgages are guaranteed by the United States government,

---

[6] Ex. 3.

[7] Ex. 4.

[8] The Peake Living Trust was amended by a Restated Agreement of the Peake Living Trust dated December 8, 2005. *See* Ex. E.

[9] The $564,100 value comes from the 2011 tax appraisal of the home. *See* Ex. F. The appraisal made of the home for the home equity conversion mortgage transaction valued it at $625,000 as of June 8, 2011. *See* Ex. 7. Using either value, the amount of Peake's one-half equity interest in the homestead does not exceed the $146,450 cap in § 522(p).

[10] Ex. 16.

3

they can only be issued according to federal law and regulation.[11] Those regulations specify that the maker of a HECM must be 62 years of age or older.[12] Peake was 62, but Mrs. Peake was not, thus the Trust deeded the property to Mr. Peake alone, making him the legal title holder who could grant the contemplated equity conversion mortgage.

On September 20, 2011, Peake gave Wells Fargo a note for $393,125 at 5.06 per cent interest, payable at the note's date of maturity, October 28, 2097.[13] Peake received a lump sum distribution of the loan proceeds, nearly all of which paid closing costs and the three senior mortgages on the property.[14] Peake also granted Wells Fargo a first mortgage to secure the note's repayment and granted the Department of Housing and Urban Development (HUD) a second mortgage covering a maximum advance of $937,500.[15] Under the terms of the note, the lump sum distribution is all that Peake will receive. Interest will accrue on the unpaid balance at the stated rate and be payable either at maturity or upon Mr. Peake's death, whichever occurs first.

Peake filed this case on November 21, 2011. The trustee objected to the exemption of Peake's

---

[11] The Home Equity Conversion Mortgage (HECM) Program is administered by the Department of Housing and Urban Development (HUD) and is part of the Housing and Community Development Act of 1987, Pub. L. 100-242, Section 417 codified at 12 U.S.C. § 1715z-20. HECM loans are insured by the Federal Housing Administration (FHA) and obtained from FHA approved lenders. HECM program regulations are contained in 24 C.F.R. pt. 200 and 206. The HECM program enables older homeowners (must be 62 years of age or older) to "withdraw" the equity in their home in the form of monthly payments or, as in this case, a lump sum. *See generally,* http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/sfh/hecm/hecmhome for an overview of the HECM program.

[12] See 12 U.S.C. § 1715z-20(b)(1) and 24 C.F.R. § 206.33.

[13] Ex. A.

[14] After payment of closing costs and $377,389 of existing mortgages encumbering the home – Fidelity Bank, $63,835; Emprise Bank, $50,000; and Citimortgage, $263,554 – Peake received a loan advance of some $9,800. *See* Exs. 8, 12, and B.

[15] Ex. 9 and 11. Polly Peake, as the "non-borrowing spouse," signed both mortgages.

share of the homestead, claiming that he acquired all of it within 1,215 days of filing and that any equity he has in it is subject to the § 522(p) limitation.[16] Peake responded that he acquired no equity or value beyond what he already owned – his equitable interest as a beneficiary – and that, in any event, Mrs. Peake retains a one-half interest in the property that she may claim as her homestead. Both Peakes continue to live in the home.

*Analysis*

***Peake's equitable interest in the homestead was exempt.***

Kansas law allows a debtor to exempt up to one acre of land within the city limits if the debtor and his family occupy the land as their residence.[17] In *Redmond v. Kester*, the Kansas Supreme Court held that a debtor who has deeded his homestead to a self-settled, living, revocable trust may still exempt his equitable interest in the land.[18] In *Kester*, the Kansas Supreme Court answered a certified question from the Tenth Circuit Court of Appeals whether a chapter 7 debtor could claim a homestead exemption for "real property that was placed in a self-settled living revocable trust prior to the bankruptcy, where the settlor and beneficiary, as well as the bankruptcy debtor, are the same person."[19] Answering in the affirmative, the court referred to a long line of Kansas cases recognizing that Kansas debtors may exempt whatever character of interest they retain in their homestead property and that title is not a necessary prerequisite to the exemption.[20] Referring to *Cole v. Coons*, the Kansas court reiterated that a homestead right can be established on a cotenancy title, a leasehold, or an equitable title in

---

[16] Dkt. 59.

[17] KAN. STAT. ANN. § 60-2301(2011 Supp.); KAN. CONST. art. 15, § 9.

[18] 284 Kan. 209, 216, 159 P.3d 1004 (2007).

[19] *Id.* at 210.

[20] *Id.* at 213-16.

5

property.[21] It noted long-standing precedent that when a debtor's interest is sufficient to uphold a levy of execution, it is also sufficient to uphold a homestead claim.[22]

*Kester* also referred to a more recent case, *In re Estate of Fink*, where the Kansas Court of Appeals concluded that establishing a homestead interest does not "depend upon being the titleholder of the property in question."[23] In that case, the decedent's widow claimed a homestead interest in the acreage on which her home had stood, but from which she had fled due to her husband's excessive drinking. After he died in 1975, she took the property as an heir at law and the probate court declared that the property was her homestead and exempt from distribution and payment of her husband's debts under the Kansas probate code.[24] She then deeded 24 acres of it to her daughter and the dwelling house was demolished. The daughter and her husband began to prepare the ground to build a new dwelling with financial assistance from the widow. The widow planned to reside with the daughter's family in the new home. One of the decedent's creditors sought an order from the probate court to sell the property to satisfy his claim. The probate court declined, concluding that the widow had not abandoned or renounced her homestead because she intended to return and live in the daughter's house. The Court of Appeals affirmed, specifically finding that because a Kansas debtor is not required to have an actual estate in land to claim it as her homestead, the fact that she had retained no interest in the 24 acre tract did not extinguish her homestead right.[25]

---

[21] *Id.* at 213.

[22] *Id.* at 213-14, citing *Tarrant v. Swain*, 15 Kan. 146 (1875) (setting aside sheriff's sale where debtor claimed half interest in exempt homestead).

[23] *In re Estate of Fink*, 4 Kan. App. 2d 523, 533, 609 P.2d 211 (1980).

[24] *See* KAN. STAT. ANN. § 59-401(2005)(homestead occupied by surviving spouse and children of decedent is exempt from distribution or payment of decedent's debts).

[25] 4 Kan. App. 2d at 531-32, relying on *Matney v. Linn,* 59 Kan. 613, 618, 54 P. 668 (1898).

6

In this case then, the fact that Ronald Peake had no legal title to the property would not have precluded him from exempting it as his homestead under the rules laid out in *Kester,* so long as he resided on the property while it remained in the Trust. But what did Peake have once the Trust deeded the land to him?

> **The Trust's deed to Peake conveyed legal title in the property to him, subject to his wife's marital and homestead claims and those of any pre-existing lienholders.**

In order for Peake to grant Wells Fargo the HECM that would secure the loan, the Trust had to deed it to him so that he held title to the homestead.[26] Because Polly Peake was too young to qualify for a home equity conversion loan,[27] she did not take title to the homestead property. Nonetheless, Kansas law accords a spouse certain rights in her husband's real estate. Peake could not alienate the homestead without Polly's consent, either by mortgage or deed.[28] Thus, her homestead interest in the land remained intact. Any attempt by him to convey or mortgage the homestead would require her assent. Indeed, Polly signed both the Wells Fargo and HUD mortgages.

> **Peake did not "acquire" any "amount of interest" in the homestead that is subject to § 522(p)'s statutory cap.**

This brings us to the crux of this case: what "amount of interest" did Peake acquire when the

---

[26] Under the HECM regulations, the mortgage "must be on real estate held in fee simple." 24 C.F.R. § 206.45(a). The party granting the mortgage on the property must "hold title to the entire property" that serves as the security for the mortgage. 24 C.F.R. § 206.35. It was therefore incumbent upon Peake to hold the title to the homestead in order to grant a HECM on the property.

[27] 24 C.F.R. § 206.33 (mortgagor minimum age 62 requirement).

[28] KAN. CONST. art. 15, § 9; KAN. STAT. ANN. § 60-2301(2011 Supp.). *See also,* KAN. STAT. ANN. § 59-505 (surviving spouse's statutory share).

7

Trust deeded the homestead to him?[29] Section 522(p) caps the "amount of interest" that a debtor may claim as an exempt homestead, if he acquired that interest during the 1,215 days preceding the petition date. The trustee, advocating a "title view" of the interest Peake acquired and relying on *In re Aroesty*, contends that Peake "acquired the homestead" when he obtained legal title from the Trust.[30] The facts in *Aroesty,* a First Circuit Bankruptcy Appellate Panel case, are very similar to ours, but the controlling state law is not. Before filing, Aroesty had a beneficial interest in a living trust similar to the one considered here. He took legal title to the homestead within the 1,215 day period. Applying Massachusetts law, the *Aroesty* court concluded that the debtor's receipt of legal title amounted to the acquisition of a quantifiable interest in the homestead within the statutory period.

There are two key differences between Massachusetts and Kansas law that render this case inapplicable to ours. First, Massachusetts law provides that a homestead is a separate estate in land. Kansas law does not. Second, a Massachusetts debtor can exempt a homestead interest that is held in a living trust only if the debtor is the trustee and sole beneficiary. In *Aroesty*, a third party was the trustee. Thus, the debtor could not have exempted her beneficial interest as a homestead before the trust's deed to her and her subsequent declaration of the homestead resulted in her acquiring all of her interest within the 1,215 days. As Kansas law does not require that a debtor have an estate in land in order to claim it as a homestead, nor does it stipulate that a debtor must be the trustee of a self-settled trust to claim an exemption in her equitable interest in the trust property, *Aroesty* simply does not apply in Kansas.

The Tenth Circuit Bankruptcy Appellate Panel has held that the word "interest" in § 522(p)

---

[29] The Trust's deed to Peake was filed of record on June 21, 2011, well within the 1,215 days preceding Peake's bankruptcy filing on November, 21, 2011.

[30] *Aroesty v. Bankowski (In re Aroesty)*, 385 B.R. 1 (1st Cir. BAP 2008).

means "equity."[31] Here, the trustee failed to prove that Peake "acquired" any additional amount of interest or equity in his homestead within the 1,215 day period that he did not already have before he obtained legal title. Nor did the trustee prove that the amount of interest in the homestead increased in value by virtue of the HECM transaction. Before Peake received the deed from the Trust, his equitable interest in the homestead amounted to the remainder of its value after deduction of the $377,389 due on the three existing mortgages. After he received the deed, he encumbered the homestead with the HECM, and paid off the three pre-existing mortgages in the same amount; the amount of his equitable interest was the same as it was before Peake obtained legal title to the homestead.[32] He did not acquire any additional value or equity as a result of this transaction. All Peake did was receive legal title to property in which he had claimed an exempt equitable interest for many years. There was no added equity or "amount of interest" acquired by Peake to be "capped" by § 522(p).

Nor does the trustee's argument that Peake acquired his wife's one-half equitable interest when the Trust conveyed legal title to Peake aid the trustee. Even if this were the case, Polly's one-half equitable interest was less than the statutory cap of $146,450 and therefore, Peake did not acquire an "amount of interest" in excess of the § 522(p) cap.[33]

---

[31] *In re Willcut*, 472 B.R. 88 (10th Cir. BAP 2012) (interpreting the phrase "value of an interest in real property" in § 522(o)(4), the BAP equated "interest" to a "monetary interest" or "economic equity" in the property). Applying principles of statutory interpretation, the BAP stated in *Willcut* that the word "interest" should be interpreted consistently within the same statute and therefore "interest" as used in § 522(p) and § 522(o) has the same meaning and it means "equity." 472 B.R. at 93, 95-97. *See also, Parks v. Anderson,* 406 B.R. 79, 95 (D. Kan. 2009).

[32] If anything, Peake's equitable interest was less after the equity conversion transaction because the HECM was in an amount greater than the 3 previous mortgages – $393,125 versus $377,389.

[33] Polly's one-half equitable interest in the homestead was no more than $116,000 in a best case scenario. Even if the Court assumes a homestead value of $625,000, deducting the HECM debt of $393,125 from this amount results in equity of $231,875 and Polly's one-half interest therein is $115,937 – under the statutory cap. *See In re Kasparek,* 426 B.R. 332 (10th Cir. BAP 2010) (Under

9

*Conclusion*

The Trustee's objection to Peake's exemption of the homestead is OVERRULED. The trustee failed to demonstrate that Peake acquired any "amount of interest" in the homestead by virtue of the Trust's deed during the 1,215-day period preceding his bankruptcy filing, or, if an "amount of interest" in the homestead was in fact acquired, that it exceeded the statutory cap of § 522(p).

Because the Trustee's challenge to Peake's homestead exemption is rejected, the Trustee's motion for turnover must also be DENIED, to the extent it seeks turnover of the homestead or the proceeds of the home equity conversion loan.[34]

# # #

---

Kansas law, a deed that does not establish an unequal allocation of co-tenants' or joint tenants' interests in real property has the legal effect of equal undivided ownership interests, and is not subject to being rebutted by evidence, citing *Anderson v. Anderson,* 137 Kan. 833, 22 P.2d 471 (1933), *reh. denied* 138 Kan. 77, 23 P.2d 474 (1933).)

[34] Dkt. 88.

10

Case 11-13575   Doc# 96   Filed 10/15/12   Page 10 of 10